UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LAURIE HANNAN,<br><br>                Plaintiff,<br><br>     v.<br><br>CITY OF TACOMA, DAVID BOBO, individually and the marital community thereof with JANE DOE BOBO, MICHAEL COMBS, individually and the marital community thereof with JANE DOE COMBS, and DOES 1-5, inclusive,<br><br>                Defendants. | Case No. C05-5396RJB<br><br><br>ORDER |

    This matter comes before the Court on Defendants' Motion for Summary Judgment on Plaintiff's Due Process and Declaratory Claims (Dkt. 43-1), Defendants' Motion to Exclude Expert Testimony (Dkt. 61-1), Plaintiff's Motion to Strike (Dkt. 54-1), Defendants' Motion for Summary Judgment on All Claims Against Does 1 to 5 (Dkt. 41), Defendants' Motion for Summary Judgment on all Remaining Claims (Dkt. 45-1), and Stipulation and Order to Allow Additional Discovery and Extend Deadlines for Disclosure of Rebuttal Witness Opinion (Dkt. 71). The Court has considered the pleadings filed in support of and in opposition to these motions and the file herein.

## I.   BASIC AND PROCEDURAL FACTS

    This case involves an employment dispute between Plaintiff, a former City of Tacoma employee, and Defendants. Dkt. 39. The City uses a classification system for its employment positions. Tacoma

ORDER - 1

City Charter Art. VI, Sec. 6.1. City employment positions are either "classified," (subject to civil service protections) or "unclassified" (not subject to civil service protections). *Id*. and Dkt. 35. Classifications are determined by the Tacoma City Council pursuant to the Tacoma City Charter. Tacoma City Charter, Art. VI, Sec. 6.1. The Tacoma City Charter states that:

> The civil service of the City is hereby divided into the classified and unclassified services. The unclassified service shall consist of . . . (d) all department heads . . . and such other principal officers and assistants to the department heads as the Council may prescribe by the affirmative vote of not less than six members. . . .

*Id.*

On January 5, 2004, Plaintiff began work as the Operations and Maintenance Manager of the Greater Tacoma Convention and Trade Center ("Operations and Maintenance Manager"). Dkt. 60, at 2. Prior accepting that position, Plaintiff worked as manager of the City of Tacoma's Steam Plant starting in 1997. *Id*. at 1-2. Both the positions were "unclassified" positions. Dkt. 44, at 19-21. David Bobo, the General Manager of the Greater Tacoma Convention and Trade Center, was Plaintiff's direct supervisor. Dkt. 60, at 2. Michael Combs, Director of Public Assembly Facilities for the City of Tacoma, was Bobo's supervisor. *Id.* Although Combs favored a male applicant for the position, he allowed Bobo to hire Plaintiff. Dkt. 46-5, at 12. The convention center was under construction at the time Plaintiff began work. *Id*. The goal was to have the convention center up and running by November 5, 2004. Dkt. 46-5, at 21-22.

As the Operations and Maintenance Manager, Plaintiff's duties included "working on long-term projects including procurement of equipment and services, developing an energy management program, resolving parking issues, personnel requisitions for the maintenance and operations department, developing a safety plan, and resolving other building issues." Dkt. 60, at 2. Plaintiff asserts in her declaration that she was the "only female in a traditionally male position." *Id*. at 3.

Plaintiff was given a general written outline of her duties, but received no further written direction. Dkt. 59, at 7 and 11. Plaintiff notes, and Defendants do not dispute, that nothing in her employment file indicates that she was performing poorly or that she was subject to discipline for poor performance. In her Response, Plaintiff points to several goals she achieved while in the position. Dkt.

ORDER - 2

58-1, at 2-3. Defendants argue that Plaintiff's work performance was not satisfactory. Dkt. 45-1, at 3.

In any event, Plaintiff points to incidents which she alleges demonstrate that the Defendants treated her differently than males and females in traditionally female positions. For example, Plaintiff stated that Bobo asked her to interview Michael Allyson in April of 2004. Dkt. 60, at 3. After the interview she asked Bobo how long he thought Mr. Allyson would stay in a position for which he was overqualified. *Id*. at 4. Plaintiff states that Bobo yelled something to the effect of "how long would any of us have our jobs." *Id.* Plaintiff also testified that in July of 2004, during a staff meeting, some of the other women were complaining about the length of the meeting. Dkt. 46-2 at 35. When Plaintiff joined in, Bobo yelled things like "it will take as long as it takes" at her and pounded his fist on the table. Dkt. 46-2 at 35-37. Some of her subordinates and a vendor were present at the meeting. Dkt. 60, at 4. Plaintiff did not observe Bobo yelling at any other member of the staff, male or female. Dkt. 46-2 at 12.

Plaintiff also points to two incidents were she felt Bobo discounted her contributions in front of contractors at progress meetings. Dkt. 58-1, at 5. In front of a contractor, Bobo noted that Plaintiff's draft report had typographical errors. Dkt. 46-2, at 39. Additionally, during a different meeting, after a contractor complimented Plaintiff on her work, Bobo muttered "the proof is in the pudding." Dkt. 46-3, at 1.

On July 12, 2004, Plaintiff held a meeting with the Human Resources ("HR") Director Woodrow Jones and HR Analyst Margith Baker regarding the hiring of some mechanics. Dkt. 60, at 6. During this meeting Plaintiff also informed Jones and Baker that she felt that another city employee, Cynthia Davies, was a victim of sex discrimination. *Id.*, at 6-7. According to Baker, she, Bobo, Combs and another individual had a meeting regarding Plaintiff just before she was fired. Dkt. 59, at 32. Two weeks after Plaintiff reported the possible discrimination, Bobo handed Plaintiff a letter from Combs terminating her employment. Dkt. 60, at 7. The letter gave no reason for her termination. Dkt. 46-5, at 24.

Plaintiff requested an exit interview and a written explanation for her termination. Dkt. 60, at 11. Each time Defendants attempted to schedule an exit interview, Plaintiff was not available. Dkt. 44,

ORDER - 3

at 35-36.  Plaintiff also asked to be returned to her former "classified" position.  Dkt. 60, at 11.  Defendants did not grant this request.  *Id.* at 8.

Plaintiff filed her original complaint on June 10, 2005, (Dkt. 1) and amended her complaint on January 3, 2006 (Dkt. 15), and again on April 11, 2006 (Dkt. 39).  Plaintiff's claims are as follows:  sex discrimination in violation of Title VII and the Washington Law Against Discrimination ("WLAD"), retaliation for reporting sex discrimination, deprivation of liberty and property interests in violation of 42 U.S.C. § 1983, conspiracy to cause deprivation of equal protection in violation of 42 U.S.C. § 1985, and negligent supervision and/or retention.  Dkt. 39.  Plaintiff seeks monetary relief and a "declaration that the City of Tacoma mischaracterized the position of Operations and Maintenance Manager as unclassified when it was a classified position," and a declaration that the "Operations and Maintenance Manager position with the Greater Tacoma Trade Convention Center was a classified position."  Dkt. 39.

*PENDING MOTIONS*

In Defendants' Motion for Summary Judgment on Plaintiff's Due Process Claim and Declaratory Relief (Dkt. 43-1), Defendants argue 1) the Tacoma City Council acted within the scope of its authority when it determined that the position of Operations and Maintenance Manager was an unclassified position, and that there is no basis upon which to overturn the Council's legislative acts; 2) Plaintiff did not have a protected property interest in continued employment; 3) Plaintiff's termination did not implicate a protected liberty interest.  Plaintiff responds that 1) the City Council improperly determined her former position was unclassified, 2) properly classified, she has a protected property interest in her former position, and 3) she is not opposing summary judgment on her liberty interest claim.  Dkt. 54-1.

Defendants move to strike Plaintiff's expert on civil service.  Dkt. 61.  Plaintiff opposes the motion.  Plaintiff moves to strike the Affidavit of Karen Short, Management Analyst for the City of Tacoma HR Department.  Dkt. 54-1, at 14.  Defendants oppose the motion.

Defendants' Motion for Summary Judgment on All Claims Against Does 1 to 5 (Dkt. 41) is

ORDER - 4

unopposed. Dkt. 53.

In Defendants' Motion for Summary Judgment on all Remaining Claims, Defendants move for summary dismissal of all Plaintiff's remaining claims. Dkt. 45-1. Defendants argue that there is no evidence to support Plaintiff's claims of gender discrimination under Title VII or the WLAD. Dkt. 45-1, at 7-10. Defendants argue that Plaintiff was not performing her job satisfactorily. *Id*. Plaintiff argues that she was performing her job well, and that Defendants reason for terminating her is a pretext for gender discrimination. Dkt. 58-1. Defendants move for summary judgment on Plaintiff's hostile work environment claim. Dkt. 45-1, at 10-13. Defendants argue that there is no evidence in the record that their behavior was based on her gender or "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment" citing *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir. 1998). *Id*. Plaintiff fails to respond. Defendants move for summary dismissal of Plaintiff's 42 U.S.C. § 1985(3) conspiracy claim. *Id*. at 14. Defendants argue that there is no evidence of a conspiracy, no evidence of invidious, discriminatory animus. *Id*. at 15-18. Plaintiff fails to respond. Defendants move for summary dismissal of Plaintiff's retaliation claim. *Id.* at 20. Defendants argue that there is no causal link between the protected activity (reporting possible discrimination against a co-worker) and her termination. *Id*. at 21-22. Plaintiff contends that a causal link can be inferred from the timing of the events: she was fired two weeks after reporting the incident. Dkt. 58-1. Defendants move for the dismissal of Plaintiff's negligent retention and supervision claim. Dkt. 45-1, at 22. Plaintiff fails to respond.

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the

ORDER - 5

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

**B**. **DEFENDANTS' SUMMARY JUDGMENT MOTION ON PLAINTIFF'S DUE PROCESS AND DECLARATORY RELIEF CLAIMS (Dkt. 43-1)**

The Fourteenth Amendment of the U.S. Constitution protects individuals against the deprivation of liberty or property by the government without due process. A threshold requirement to a procedural due process claim is the deprivation of a constitutionally protected liberty or property interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577(1972). Plaintiff is not opposing summary judgment on her claim that she had a protected liberty interest (Dkt. 54-1, at 2), but asserts that she had a constitutionally protected property interest in her position (Dkt. 54-1, at 11-14). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have

ORDER - 6

more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. at 577. "Property interests . . . are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*.

Parties do not dispute that Plaintiff's position as the Operations and Maintenance Manager was an unclassified position (one without civil service protection). Plaintiff argues, however, that the City Council improperly created her position as unclassified, and seeks a declaratory judgment to reclassify her position, thus giving her a protected property interest. Dkt. 54-1, at 11-12. In so doing, Plaintiff states that she is "not challenging the constitutionality of the Tacoma City Charter" but is "simply asserting that Defendant City failed to strictly follow the plain language of its own charter when it classified Plaintiff's position as 'unclassified.'" Dkt. 54-1, at 11-12. Although Plaintiff denies it, she is challenging the validity of the ordinance which created her position as an unclassified position.

Municipal ordinances are presumed to be valid, and considerable weight must be given to the City's interpretation of it's own Charter. *See Heinsma v. City of Vancouver*, 144 Wn.2d 556, 566 (2001). "The interpretation of municipal charters, like the interpretation of ordinances, is governed by the rules of statutory construction." *Canfield v. Sullivan,* 774 F.2d 1466,1468-69 (9th Cir. 1985). Federal courts apply state rules of statutory construction when interpreting a state statutory provision. *Nielson v. Chang (In re First T.D. & Inv. Inc.)*, 253 F.3d 520, 526 (9th Cir. 2001). Under Washington law, the key objective is to carry out legislative intent:

> To determine legislative intent, this court looks first to the language of the statute. If the statute is unambiguous, its meaning is be derived from the plain language of the statute alone. Legislative definitions provided in a statute are controlling, but in the absence of a statutory definition, courts may give a term its plain and ordinary meaning by reference to a standard dictionary. This court, however, will avoid literal reading of a statute which would result in unlikely, absurd, or strained consequences. The spirit or purpose of an enactment should prevail over ⋯ express but inept wording. An unambiguous statute is not subject to judicial construction. A statute is ambiguous if it can reasonably be interpreted in two or more ways, but it is not ambiguous simply because different interpretations are conceivable. This court is not obliged to discern any ambiguity by imagining a variety of alternative interpretations.

ORDER - 7

*Fraternal Order of Eagles v. Grand Aerie of Fraternal Order fo Eagles*, 148 Wn.2d 224, 239-40 (2002)(*internal citations and quotations omitted*).

Tacoma City Council Charter §6.1(d) is unambiguous. It indicates that the "unclassified service shall consist of . . . (d) all department heads . . . and such other principal officers and assistants to the department heads as the Council may prescribe . . . ." The City's interpretation that Plaintiff's position is a "principal officer" comports with the plain language of the City Charter. The City Charter does not define "principal officer," but Webster's Dictionary defines principal as "a person who has controlling authority or is in a leading position" and officer as "one who holds an office of trust, authority or command." Webster's Ninth New Collegiate Dictionary (1986) at 935 and 820. Plaintiff attempts to create an issue of fact by providing expert testimony that the City has mistakenly classified her position. Dkt. 57. However, determination of whether the City has properly interpreted it's own Charter in this matter is an issue of law, and not an issue of fact. Plaintiff's expert has essentially offered conclusions of law. Moreover, Plaintiff offers no authority which vests this Court with the power to alter the legislative decision of the City Council and make the declaration she seeks: that her position should be made a classified position. Plaintiff fails to show that she had a property interest in her former position. Since the existence of a protected property right is essential to Plaintiff's due process claim, it should be dismissed with prejudice.

**C.    MOTIONS TO STRIKE (Dkts. 61-1 and 54-1)**

Defendants move to strike the testimony of John Cunningham, Plaintiff's expert on civil service positions. Dkt. 61. Defendants' motion should be granted. Mr. Cunningham's testimony hinges on his opinion of what Tacoma City Charter §§ 6.1 and 6.2 mean. Dkt . 61, at 3. Accordingly, they are conclusions of law and his testimony should be stricken.

Plaintiff moves to strike the Affidavit of Karen Short (Dkt. 35). Dkt. 54-1, at 14. Plaintiff argues she is also offering her interpretation of the Tacoma City Charter, is therefore an unqualified expert, and her affidavit should be stricken. *Id.*, at 14-17. Plaintiff's motion should be denied. Short's testimony is offered based upon her personal observations, not as expert opinion. Dkt. 35.

ORDER - 8

C. **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL REMAINING CLAIMS (Dkt. 45-1)**

1. **SEX DISCRIMINATION UNDER TITLE VII AND THE WASHINGTON LAW AGAINST DISCRIMINATION**

Under Title VII, an employer may not discriminate against a person with respect to his " . . . terms, conditions, or privileges of employment" because of his "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). To establish a prima facie case of discrimination under Title VII, a plaintiff must provide evidence that gives rise to an inference of unlawful discrimination. *Texas Dept. Of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). A Title VII plaintiff alleging discriminatory treatment may prove her case through circumstantial evidence, following the burden shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Washington courts have largely adopted the burden shifting scheme announced in *McDonnell Douglas* to claims of employment discrimination cases brought under the WLAD. *See Grimwood v. University of Puget Sound*, 110 Wash.2d 355, 362 (1988)(applying the *McDonnell Douglas* test to claim of employment discrimination brought under WLAD); *Coghlan v. American Seafoods Co. LLC*, 413 F.3d 1090, 1094 (9th Cir. 2005)(noting Washington's employment discrimination law largely parallels federal law under Title VII, and so treatment of a plaintiff's Title VII claim thus applies also to his similar claim under the WLAD); *Hernandez v. Space Labs Medical Inc.*, 343 F.3d 1107 (9th Cir. 2003)(applying *McDonnell Douglas* burden shifting test to sex discrimination claim brought under Title VII and the WLAD). The discussion that follows applies to Plaintiff's sex discrimination claim brought under Title VII and WLAD.

The first step of the *McDonnell Douglas* test requires that plaintiff establish a prima facie case of discrimination. *Id.* A plaintiff must establish that (1) she belongs to a protected class, (2) she was qualified for the position (she was performing her job in a satisfactory manner), (3) she was subjected to an adverse employment action, and (4) she was replaced by a person outside the protected class. *See Coghlan* at 1094; *McDonnell Douglas* at 802.

ORDER - 9

In the second step of the *McDonnell Douglas* test, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *Id.*

In the last step of the *McDonnell Douglas* test, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *McDonnell Douglas* at 802.

a. First Step under *McDonnell Douglas*: the Plaintiff's Prima Facie Case

The parties in this matter do not contest the first, third, and fourth prongs of the prima facie case under *McDonnell Douglas*: that Plaintiff belongs to a protected class (she is a woman), was subjected to an adverse employment action (she was fired), and was replaced by a person outside the protected class (a man). Dkts. 45 and 58. Parties do not meaningfully dispute, for purposes of this motion, that Plaintiff was qualified for her position. *Id.* Contrary to Defendants' assertions, Plaintiff argues that her work performance was satisfactory, and so meets the second prong of the test. Dkt. 58-1, at 11-12. She points to the fact that there is nothing in her personnel file that indicates that she was performing poorly, and alleges that she was never disciplined, or told that she was not performing her job in a way that met her supervisor's expectations. *Id.* Plaintiff stated, in her declaration, that Bobo gave her the impression that she "was on the right track." Dkt. 60, at 2. Plaintiff has pointed to evidence in the record which makes out her prima facie case. Defendants argue that Plaintiff testified in her deposition that she knew Bobo was not happy with her job performance, and discussed the matter with Bobo's assistant citing Dkt. 46-2, at 29. Dkt. 63, at 3 n.2. This argument goes to Plaintiff's credibility, a determination best left to the province of a jury.

b. Second Step under *McDonnell Douglas*: Defendants' Reasons

Because Plaintiff has met her burden regarding the prima facie case, the next stage of the *McDonnell Douglas* test requires examination of Defendants' proffered reasons for Plaintiff's termination. *McDonnell Douglas* at 802. Defendants state that they fired Plaintiff because of

ORDER - 10

unsatisfactory job performance. Dkt. 45-1, at 3. Defendants state that they were attempting to get the convention center ready by November 5, 2004, and were under significant time pressure in the prior months. Dkt. 46-5, at 21-22. Defendants state that Plaintiff was having difficulty prioritizing and completing the purchases for the convention center's fixtures, furniture, and equipment. Dkt. 46-4, at 28-31. According to Defendants, Plaintiff's failure to prioritize necessitated Bobo's assumption of some of her duties, and as a result, time he would have spent on marketing was forgone. Dkt. 46-5, at 18. Additionally, Defendants state that Plaintiff failed to "get to know the building" before the drywall went in, so she could make notes, because changes may or may not be reflected in the buildings plans. Dkt. 46-4, at 28-31. Defendants have provided legitimate, nondiscriminatory reasons for Plaintiff's termination, and thus meet their burden under the second step of the *McDonnell Douglas* test. Plaintiff does not directly challenge Defendants' reasons meaningfully.

       c. <u>Third Step under *McDonnell Douglas*: Plaintiff's Evidence of Pretext</u>

  Shifting the burden back to Plaintiff under the third step of the *McDonnell Douglas* test, Plaintiff has failed to prove by a preponderance of the evidence that the reasons offered by Defendant were not it's true reasons, but were a pretext for discrimination. *McDonnell Douglas* at 802.

  A plaintiff can prove pretext either "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' or otherwise not believable, or (2) directly by showing that unlawful discrimination more likely than not motivated the employer." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.133 (2000). Plaintiff points to events that she alleges demonstrate Defendants treated her differently because she was a woman in a nontraditional position. Dkt. 58-1, at 11. Plaintiff argues that it was because of this differential treatment that discriminatory intent can be inferred as the basis for her termination. *Id*.

  On the outset, it should be noted that Plaintiff has failed to provide evidence that she was in a nontraditional position, or that other women in her office (the financial analyst, for example) were in traditional roles. In any event, as evidence of discriminatory intent, Plaintiff argues that she was screamed at on two occasions by her boss and "demeaned in front of those who were supposed to report

ORDER - 11

to her while no male was ever treated in this fashion." Dkt. 58-1, at 13. Plaintiff, however, acknowledges only that <u>she</u> did not hear Bobo scream at any other person in the office, male or female. Dkt. 46-2, at 12. Plaintiff fails to establish that being screamed at, though unpleasant, on these occasions was connected to her gender or is evidence of discriminatory animus. Plaintiff argues that Bobo discounted her contributions in front of contractors and points to two incidents: one in which Bobo noted that there were typographical errors in her draft proposal and one in which he muttered "the proof is in the pudding." There is no evidence in the record that these statements were motivated by Plaintiff's gender. Plaintiff argues that "males who were terminated from positions which the city categorized as 'unclassified' were permitted to return to former 'classified' or civil service positions." Dkt. 58-1, at 13. Plaintiff notes that she was denied her request to return to her classified position. *Id*. This argument, even if true, is not helpful to Plaintiff because it is not evidence of discriminatory animus <u>before</u> her termination. Moreover, these incidents do not show that the City's explanation is unbelievable or that unlawful discrimination more likely than not motivated the City. *See Reeves* at 143-44. Lastly, Plaintiff argues that Defendants were discriminating against another employee, Cynthia Davies. *Id.* This argument also fails Plaintiff because she does not connect this allegation to her termination.

          d.      <u>Conclusion</u>

Plaintiff's Title VII claim should be summarily dismissed in its entirety. Plaintiff has failed to point to evidence in the record which shows Defendants' proffered reason for her termination was a pretext for discrimination.

**2.    RETALIATION CLAIM**

To establish a retaliation claim under Title VII and the WLAD, a plaintiff must show (1) involvement in a protected activity, (2) an adverse employment action, and (3) a causal link between the two. *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003); *Brooks v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000) (*citing Payne v. Norwest Corp.*, 113 F.3d 1079 (9th Cir.1997)). At that point, "the burden of production shifts to the employer to present legitimate reasons

ORDER - 12

for the adverse employment action. Once the employer carries this burden, plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer was a pretext. Only then does the case proceed beyond the summary judgment stage." *Id.*

      a.    <u>Involvement in a Protected Activity</u>

"Title VII protects the right to be free from certain types of forbidden discrimination, as well as the right to speak out against such discrimination. It also protects against retaliation for the exercise of the right to speak out against discrimination." *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003). The person who speaks out against the forbidden discrimination does not have to be the victim to be afforded protection. *Id.* Plaintiff engaged in protected activity when she reported to HR that she felt that the City was discriminating against Ms. Davis. *See Id.* (holding employee who was terminated engaged in protected activity when he reported a co-worker was being sexually harassed by their supervisor).

      b.    <u>Adverse Employment Action</u>

Neither party disputes that termination is an adverse employment action. Plaintiff has establish the second prong of the test for retaliation.

      c.    <u>Causal Connection between Protected Activity and Adverse Action</u>

As to the final prong, Plaintiff fails to offer evidence of a causal connection between the protected activity and the adverse employment action. Plaintiff argues that the "causal link between an employee's protected activity and the alleged retaliatory action can be inferred from timing alone when there is a close proximity between the two events" citing *Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004). Dkt. 58-4, at 14. Plaintiff then points out that she was fired two weeks after reporting to the Human Resources Department that she felt the City was discriminating against Ms. Davies. *Id.* In some cases, the temporal proximity between the two events is significantly probative. *Hernandez*, at 1115. In *Hernandez*, the Ninth Circuit found that termination nine days after an employee reported the sexual harassment of a co-worker was sufficient evidence to infer defendant's reasons for firing him were pretextual. *Id.* However, in that case, there was ample evidence in the

ORDER - 13

record that the person who terminated Hernandez knew of his protected activity. *Id.* Plaintiff cites *Alfonso v. GTE Directories Corp.,* 137 F. Supp.2d 1212, 1221 (U.S. Dist. Ore. 2001) for the proposition that "[e]ven without the record clearly establishing Human Resources informed the decision maker of Plaintiff's complaints of possible discrimination, facts in the record can create an inference of impermissible retaliation." Dkt. 58-1, at 14. Here, however, there is simply no evidence in the record to support an inference that Bobo or Combs knew that Plaintiff had reported her suspicions to HR.

### d. Conclusion

Plaintiff fails to produce material facts which are in dispute as to her retaliation claim. Plaintiff's retaliation claim should be summarily dismissed.

### 3. CONSPIRACY

Under 42 U.S.C. § 1985(3), a Plaintiff must prove:

> (1) a conspiracy, (2) to deprive any person or a class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or a deprivation of any right or privilege of a citizen of the United States.

*Gillespie v. Civiletti,* 629 F.2d 637, 641 (9th Cir. 1980)(*internal citations omitted*). Although Plaintiff states in her Response that she opposes dismissal of this claim in her introduction, she does not address the motion to dismiss this claim in the body of her pleading. Defendants properly point out that there is no evidence in the record of conspiracy or an act in furtherance of a conspiracy. Dkt. 45-1, at 14-20. Plaintiff's claim for conspiracy under 42 U.S.C. § 1985 should be dismissed.

### D. CONCLUSION ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff failed to establish that she had a constitutionally protected property or liberty interest and so Defendants' Motion for Summary Judgment on her Due Process claim and for declaratory relief (Dkt. 43-1) should be granted. Defendants' Motion for Summary Judgment on all Claims Against Does 1 to 5 (Dkt. 41-1) is unopposed, and therefore should be granted. Plaintiff does not oppose Defendants' summary judgment motion on her hostile work environment, negligent retention, or negligent supervision claims (Dkt. 58-1, at 2) and so Defendants' motion on those claims (45-1) should be granted. Defendant's Summary Judgment Motion on Plaintiff's Title VII and WLAD claims should be

ORDER - 14

granted because Plaintiff failed to meet her burden under step three of the *McDonnell Douglas* test. Defendant's Summary Judgment Motion on Plaintiff's retaliation claim should be granted because Plaintiff did not establish a causal link between her protected activity and her termination.

E.  **STIPULATED DISCOVERY MOTION (Dkt. 71)**

In light of the forgoing rulings, the parties' Stipulation and Order to Allow Additional Discovery and Extend Deadlines for Disclosure of Rebuttal Witness Opinion (Dkt. 71) should be stricken as moot.

### III.  ORDER

Therefore, it is hereby **ORDERED** that

- Defendants' Motion for Summary Judgment on Plaintiff's Due Process and Declaratory Claims (Dkt. 43-1) is **GRANTED**, Plaintiff's Due Process claims are **DISMISSED WITH PREJUDICE**;
- Defendants; Motion to Exclude Expert Testimony (Dkt. 61-1) is **GRANTED**,
- Plaintiff's Motion to Strike (Dkt. 54-1) is **DENIED**,
- Defendants' Motion for Summary Judgment on All Claims Against Does 1 to 5 (Dkt. 41) is **GRANTED**,
- Defendants' Motion for Summary Judgment on all Remaining Claims (Dkt. 45-1), is **GRANTED**.
- Parties Stipulation and Order to Allow Additional Discovery and Deadlines for Disclosure of Rebuttal Witness Opinion is (Dkt. 71) **STRICKEN AS MOOT**.
- This case is **DISMISSED**.

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 27th day of July, 2006.

Robert J. Bryan
United States District Judge

ORDER - 15